**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | X | |
| In re: | : | Chapter 11 |
| | : | |
| MF GLOBAL HOLDINGS, LTD.; MF | : | Case No. 11-15059 (MG) |
| GLOBAL FINANCE USA, INC., *et al*., | : | Case No. 11-15058 (MG) |
| | : | |
| | : | (Jointly Administered) |
| | : | |
| Debtors. | : | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | X | |
| | : | |
| TODD THIELMANN, PIERRE-YVAN | : | |
| DESPAROIS, NATALIA SIVOVA, | : | |
| SANDY GLOVER-BOWLES, ARTON | : | |
| SINA, and SCOTT L. KISCH, Individually, | : | |
| and on behalf of All Other Similarly | : | |
| Situated Former Employees, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Adv. Pro. No. 11-02880 (MG) |
| v. | : | |
| | : | |
| MF GLOBAL HOLDINGS, LTD, MF | : | |
| GLOBAL HOLDINGS USA, INC., MF | : | |
| GLOBAL FINANCE USA, INC.; *et al.,* | : | |
| | : | |
| Defendants. | : | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | X | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION AND RELATED RELIEF**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 2

ARGUMENT ....................................................................................................................... 9

   I.   Inquiries into the Merits on Class Certification are Limited and are Not Binding on the Factfinder at a Later Stage in the Proceedings.................................................... 9

   II.   Certification of a Class Will Allow for Orderly and Efficient Resolution of the Case .... 10

   III.   The Court Should Certify a Class and May, but Need not at This Time, Create Two Formal or Informal Subclasses. ...................................................................... 11

   IV.   Proposed definitions.................................................................................................. 13

   V.   The Proposed Class Satisfies the Requirements of Rule 23. ............................. 14

      A.   The Proposed Class Meets the Requirements of Rule 23(a). .................... 14

         1.   The Numerosity Requirement is Satisfied. ............................................ 14

         2.   Questions of Law and Fact Are Common to All Members of the Proposed Class and the Claims of the Class Representatives are Typical of the Class ................... 15

         3.   Plaintiffs Will Fairly and Adequately Protect the Interests of the Class ............... 20

      B.   The Proposed Class Meets the Requirements of Rule 23(b)(3) ................................ 22

   VI.   Appointment of the Class Representatives ....................................................... 24

   VII.   The Form and Manner of Service of Notice.................................................... 24

CONCLUSION.................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alberts v. Nash Finch Co.*,
  245 F.R.D. 399 (D. Minn. 2007) .......................................................................10

*Amchem Prods v. Windsor*,
  521 U.S. 591 (1997) .........................................................................................20

*Amgen v. Connecticut Retirement Plans and Trust Funds*,
  133 S.Ct. 1184 (2013) ........................................................................................9

*Bd. of Trustees of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
  269 F.R.D. 340 (S.D.N.Y. 2010) .....................................................................12

*Boucher v. Syracuse Univ.*,
  164 F.3d 113 (2d Cir. 1999) .............................................................................11

*Bourlas v. Davis Law Associates*,
  237 F.R.D. 345 (E.D.N.Y. 2006) .....................................................................20

*Casale v. Kelly*,
  257 F.R.D. 396 (S.D.N.Y. 2009) .................................................................11, 12

*Cashman v. Dolce Int'l/Hartford*,
  225 F.R.D. 73 (D. Conn. 2004) ..........................................................14, 15, 19, 20

*In re Drexel Burnham Lambert Group, Inc.*,
  960 F.2d 285 (2d Cir. 1992) .............................................................................21

*Dunnigan v. Metro. Life Ins. Co.*,
  214 F.R.D. 125 (S.D.N.Y. 2003) .....................................................................13

*Eisen v. Carlisle & Jacquelin*,
  391 F.2d 555 (2d Cir. 1968), *cert. denied*, 417 U.S. 156 (1974) ...........................21

*Grunin v. International House of Pancakes*,
  513 F.2d 114 (8th Cir.), *cert. denied*, 423 U.S. 864, 96 S. Ct. 124 (1975) ............24

*Guippone v. BH S & B Holdings LLC*,
  737 F.3d 221 (2d Cir. 2013) .............................................................................10

*Guippone v. BH S&B Holdings LLC*,
  09 CIV. WL 1345041 (S.D.N.Y. Mar. 30, 2011) ..........................................*passim*

iii

*In re Initial Pub. Offerings Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006)................................................................9

*Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.*,
    993 F.2d 11 (2d Cir.1993)................................................................11

*In re MF Global Holdings Ltd.*,
    481 B.R. 268 (Bankr. S.D.N.Y. 2012).............................................5

*In re MF Global Inc.*,
    512 B.R. 757 (Bankr. S.D.N.Y. 2014).............................................10

*Noble v. 93 Univ. Place Corp.*,
    224 F.R.D. 330 (S.D.N.Y. 2004) .....................................................13

*Patrowicz v. TransamericaHomeFirst, Inc.*,
    359 F. Supp. 2d 140 (D. Conn. 2005)..............................................25

*In re PE Corp. Securities Litig.*,
    228 F.R.D. 102 (D. Conn. 2005).......................................................22

*In re Pfizer Inc. Sec. Litig.*,
    282 F.R.D. 38 (S.D.N.Y. 2012) .......................................................11

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)..........................................................................22

*In re Partsearch Technologies, Inc.*,
    453 B.R. 84 (Bankr. S.D.N.Y. 2011)....................................15, 22, 23

*Ramcharan v AFL Quality Inc., et al.*,
    Civ. No. 12-7551 (RMB) (D.N.J. Apr. 14, 2015) (Exhibit 30) ............10

*Ramos v. SimplexGrinnell LP*,
    796 F.Supp.2d 346 (E.D.N.Y. 2011) ...............................................22

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir.1993)....................................................11, 15

*Roquet v. Anderson*,
    2003 WL 21994019 (N.D. Ill. Aug.18, 2003) .......................................19

*Shepherd v. ASI, Ltd.*,
    295 F.R.D. 289 (S.D. Ind. 2013)......................................................17

*Spagnola v. Chubb Corp.*,
    264 F.R.D. 76 (S.D.N.Y. 2010) ........................................................13

*In re Sumitomo Copper Litig.*,
 194 F.R.D. 480 (S.D.N.Y. 2000) ........................................................................22

*Wal-Mart Stores, Inc. v. Dukes*,
 131 S. Ct. 2541, 180 L.Ed.2d 374 (2011) .............................................................17

*Wal-Mart Stores, Inc., v. Visa USA Inc. (In re Visa Check/MasterMoney Antitrust Litig.)*,
 280 F.3d 124 (2d Cir. 2001).................................................................................22

*Weinberger v. Kendrick*,
 698 F.2d 61 (2d Cir. 1983)...................................................................................24

**Statutes**

29 U.S.C. § 2101(a)(1), *et. seq* ....................................................................................15

Securities Investor Protection Act, 15 U.S.C. § 78aaa, *et. seq*. .....................................6

WARN Act.................................................................................................... *passim*

**Other Authorities**

20 C.F.R. § 639(a)......................................................................................................16

Bankruptcy Rule 7023 ..................................................................................................1

Fed. R. Civ. P. 23(a) ................................................................12, 13, 14, 15, 21, 22

Fed. R. Civ. P. 23(b) .........................................................................14, 22,23,24

Fed. R. Civ. P. 23(c) ...................................................................11, 12, 24, 25, 26

Fed. R. Civ. P. 23(d) .........................................................................................12

## SUMMARY OF EXHIBITS

Hearing Trans, Sept. 12, 2012, 37:16-20 ................................................. Exhibit 1

Declaration of Bradley Abelow
        Dated October 31, 2011 ....................................................Exhibit 2

Pages from MF Global Holdings, Ltd.'s May, 20 2011 10-K filing
        Dated May, 20 2011....................................................Exhibit 3

Schedule 4 Amended and Restated Support Services, Space Sharing and
  Expense Agreement (Plaintiffs' Deposition Exhibit 8) ...........................Exhibit 4

Pages from Deposition of Janella Kaczanko
        Dated June 22, 2015....................................................Exhibit 5

Pages from Deposition of Thomas Connally
        Dated June 11, 2015....................................................Exhibit 6

Declaration of Todd Thielmann....................................................Exhibit 7

Declaration of Pierre-Yvan Desparois ....................................................Exhibit 8

Declaration of Natalia Sivova ....................................................Exhibit 9

Declaration of Sandy Glover-Bowles ....................................................Exhibit 10

Declaration of Arton Sina ....................................................Exhibit 11

Declaration of Scott Kisch ....................................................Exhibit 12

Janella Kaczanko LinkedIn Profile
        (Plaintiffs' Deposition Exhibit 66)................................................Exhibit 13

Pages from Deposition of Mona Adler
        Dated June 26, 2015....................................................Exhibit 14

Pages from Deposition of Teresa Flynn
        Dated June 12, 2015....................................................Exhibit 15

MF Global Legal Structure Flowchart
        (Plaintiffs' Deposition Exhibit 77)................................................Exhibit 16

Oracle Spreadsheet
        Dated October 27, 2011 ............................................................Exhibit 17

Pages from Deposition of Sean Gumbs
    Dated June 19, 2015...............................................................Exhibit 18

Declaration of Marion Corrigan.................................................Exhibit 19

Pages from Deposition of Natalia Sivova
    June 18, 2015 ........................................................................Exhibit 20

Pages from Deposition of Darya Geetter
    Dated June 26, 2015...............................................................Exhibit 21

Mona Adler LinkedIn Profile
    (Plaintiffs' Deposition Exhibit 81)..............................................Exhibit 22

MF Global Company Overview Draft Powepoint
    (Plaintiffs' Deposition Exhibit 55) .............................................Exhibit 23

Freeh v. Corzine Complaint.....................................................Exhibit 24

Order of the District Court issued under the Securities Investor Protection Act
    Dated October 31, 2011 ..............................................Exhibit 25

Pages from Deposition of James Kobak
    Dated June 29, 2015...............................................................Exhibit 26

E-mail from T. Connolly, Subj: Proposed all employee note – for publication asap
    (Plaintiffs' Deposition Exhibit 13)..............................................Exhibit 27

E-mail from J. Kaczanko, Subj: Re: Plan
    (Plaintiffs' Deposition Exhibit 32)..............................................Exhibit 28

MF Global Term letter to Employees
    (Defendants' Deposition Exhibit 5).............................................Exhibit 29

AFL Order ..........................................................................Exhibit 30

Order Appointing Interim Class Counsel ..............................................Exhibit 31

Declaration of Charles Ercole in Support of Motion for Class Certification
    and Related Relief .......................................................Exhibit 32

Declaration of Mary Olsen in Support of Motion for Class Certification
    and Related Relief.......................................................Exhibit 33

Proposed Class Notice ...........................................................Exhibit 34

Proposed Order ......................................................................................Exhibit 35

## <u>INTRODUCTION</u>

Todd Thielmann, Pierre-Yvan Desparois, Natalia Sivova, Sandy Glover-Bowles, Arton Sina, and Scott L. Kisch (collectively "Plaintiffs"), move this Court for an order certifying a class pursuant to the Federal Rules of Civil Procedure Rule 23 and Bankruptcy Rule 7023. Class certification is straightforward in this case, despite the fact that the Chapter 11 Debtors contest their employer status. At the outset of this litigation, this Court posed an important question – whether the MF Global "people who worked for the broker/dealer [were] employees of the broker/dealer or were they employees of Holdings USA assigned to the broker/dealer?? (Hearing Trans, Sept. 12, 2012, 37:16-20 (Exhibit 1[1])).

While this question could ultimately be dispositive on the merits for many of the proposed class members, Courts are not authorized to make binding merits determinations at the class certification stage. The sole inquiry is whether Rule 23's prerequisites are met. At this stage, the evidence shows two things. First, the "employer" question can be answered on a class-wide basis, justifying certification. Second, the common evidence points to the conclusion that Holdings USA was the employer of the broker dealer workers and the entire class – also justifying litigation as a class on the merits.

The evidence shows every putative class member was hired as an employee of defendant, MF Global Holdings USA, Inc. ("Holdings USA"), and continued in that employment relationship throughout their tenure at MF Global. Defendants assigned them to work "at" or "in" other MF Global groups or entities. Groups generally described the type of corporate or product-related work they did. Entities or cost centers were ledger designations to capture their labor costs for financial accounting "convenience," regulatory and tax purposes. For lower-level

---

[1] Unless otherwise specified, Exhibits refer to the exhibits to the Declaration of Jack A. Raisner submitted herewith.

broker dealer-related employees, Holdings USA entered the MFGI code in the Oracle general ledger for financial accounting convenience.  Holdings USA, however, was the ultimate parent. It carried on its business under the guise of these on-paper entities by supplying them not only the operating capital, budgeting and administration, but all staffing, included the highest-level executives of each business group who themselves "sat" at Holdings USA.  All MF Global staff, including at the broker dealer, reported up to their superiors at the Holdings USA level who were operationally responsible for their business product or corporate work.

After October 31, 2011, the Defendants' estates no longer needed the vast majority of their employees, and so they were terminated without timely notice.  Again, this was done, according to the evidence, in a sweeping, class wide manner at a point when the class members were still Holdings USA employees.  Accordingly, a class should be certified so that the merits of the entire WARN Act litigation can be adjudicated in a manner consistent with Rule 23 and judicial efficiency.

## **STATEMENT OF FACTS**

MF Global was a global financial brokerage firm.  (Declaration of Bradley I. Abelow, ¶7, Exhibit 2).  Defendants, MF Global Holdings, Ltd. ("Holdings Ltd."), MF Global Holdings USA, Inc. ("Holdings USA"), and MF Global Finance USA, Inc. ("Finance USA," and collectively, "Defendants"), were entities within the integrated MF Global firm.  (*See* Relevant Excerpts from MF Global Holdings, Ltd.'s May 20, 2011 10-K filing, Exhibit 3).  Defendants maintained four facilities that are relevant to this litigation, two in New York and two in Chicago (collectively, the "Facilities"). (Exhibit 4); (Deposition of Jannella Kaczanko ("Kaczanko Dep."), (48:17-49:4, Exhibit 5).

Redacted

(Deposition of Thomas Connolly ("Connolly

2

Dep.") (77:13-14, Exhibit 6).  They worked at one of Defendants' Facilities until they were

terminated on or about November 11, 2011.  *See* Third Amended Complaint ("Complaint"),

¶27). Doc No. 125  Plaintiffs understood MF Global, generally, to be the company for which

they worked.  (*See* Plaintiffs' Decs.[2]).  Redacted

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████  (*See* Exhibit A to Plaintiffs' Decs.).

Redacted ████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████  (Connolly Dep., 39:8-25, 68:4-22, 116:24-117:7, 104:5-

105:25, 169:22-170:17). Redacted ███████████████████████

████████████████████████████████████████████████████

█████████████████████████  (*Id.*) Redacted ████████████

████████████████████████████  (*Id.*)

Redacted ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████  (*See* Plaintiffs' Decs.) Redacted ███████

---

[2] The declarations of Plaintiffs are collectively referred to as Plaintiffs' Decs. (Exhibits 7-12)
[3] Redacted ████████████████████████████████████████████████
████████████████████  (Thielmann Dec., ¶5) (Exhibit 7).



Redacted (Kaczanko Dep., 20:20-21:2, 22:20-24:10); (Exhibit 13); (Connolly Dep., 25:9-26:19).

Redacted

(Connolly Dep., 83:2-83:9, 144:13-145:23, 266:17-268:2). Redacted

(Deposition of Mona Adler ("Adler Dep."), 58: 29-59:9, 62:7-23, 63:6-14, 120:2-19, Exhibit 14). Redacted

(See Exhibit 17). Redacted

(Connolly Dep., 27:10-28:15, 266:17-268:2; *Id.* at 160:21-161:14, 163:17-164:21 (Redacted

); (Deposition of Teresa Flynn (("Flynn Dep."), 85:21-89:19, Exhibit 15) (Redacted

).

Redacted

(Connolly Dep., 110:5-22 Redacted

, 266:17-268:2 (Redacted

; 317:22-24 (Redacted ); 141:13-16, 147:18-22, 306:11-14 (Redacted

---

[4] Redacted

(Exhibit 17) (Deposition of Sean Gumbs ("Gumbs Dep."), 28:9-25, 29:3-31:3, Exhibit 18).

Redacted ); Exhibit 16).  Defendants represent that

Holdings USA merely provided back office support for the revenue-generating broker dealer,

MFGI. *In re MF Global Holdings Ltd.,* 481 B.R. 268, 274 (Bankr. S.D.N.Y. 2012) (Court noted

that Defendants' brief "emphasized the point" [that Holdings USA was] "'essentially a pass-

through entity that merely 'provided certain administrative services to MF Ltd. and its domestic

subsidiaries.'") The broker dealer supervisors who ran and controlled the broker dealer Redacted in

Holdings USA.  They included the head of all broker dealer operations in Chicago, the heads of

the Equities, Fixed Income, Foreign Exchange, Client Management and Treasury bond

trading.  (Declaration of Marion Corrigan ("Corrigan Dec."), Exhibit 19); (Connolly Dep.,

144:13-145:23, 266:17-268:2); (*See also* Connolly Dep., 277:24-282:19) (Redacted

. Redacted

Redacted (Deposition of Natalia Sivova ("Sivova

Dep.") 37:5-39:12 (Exhibit 20); (Redacted

); (Connolly Dep., 31:19-33:20, 133:8-22, 210:7-25); (10/27 spreadsheet)

Exhibit 17). Thus, accounting codes were not always aligned with job duties – Redacted

( 10/27

spreadsheet) (Exhibit 17).  The accounting codes, however, generally reflect the reporting

structure in that those with subsidiary codes reported up to their business leaders who were

coded as Holdings USA or in the case of the CEO and a few others, Holdings Ltd.  Redacted



Redacted ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*)

Redacted ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(Connolly Dep. 119:6-19; 152:7-14) Redacted ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ (Adler Dep., 17:5-21, 101:7-13); (Exhibit 22). Redacted ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ (Connolly Dep., 105:16-25).

Plaintiffs did not encounter distinctions between the MF Global entities in the course of their work; they neither understood MF Global's corporate structure nor whether the name MF Global referred to a specific entity within it. (Plaintiffs' Decs.) Indeed, Connolly, himself, confirmed at his deposition that he did not know Redacted ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮ (Connolly Dep., at 26:24-27:3). Redacted ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮ (Kaczanko Dep., 15:17-24, 16:12-17:1, 20:9-19, 23:20-24:10); (Exhibit 13); (Geetter Dep., 42:20-43:10).

After Plaintiffs entered into the Agreement with Holdings USA, they did not think their employment relationship was altered while they were employed. (Plaintiffs' Decs.) Plaintiffs never were so informed, nor told by MF Global that their employer was other than the MF Global entity named in their Agreements – Holdings USA. (*Id.*; *see also* Connolly Dep., 116:15-

6

24, 117:11-20) (Redacted ███████████████████████████████████

██████████████████████████████████████████████████)).

Redacted ████████████████████████████████████████████

█████████████████████ (Gumbs Dep., 80:23-81:5, 82:17-84:11-85:5, 86:11-25);
(Exhibit 23, at p. 5); (Relevant excerpts of Complaint filed in *Freeh v. Corzine, et al.*, Adv. Pro.
No. 13-01333-mg, Exhibit 24).  On October 31, 2011, defendant Holdings Ltd., defendant
Finance USA, and various other MF Global entities filed for Chapter 11 bankruptcy.  (Case No.
11-15059-mg, Doc. 2 (Bankr. S.D.N.Y. Oct. 31, 2011)).  MF Global Inc. ("MFGI"), the FINRA
registered broker-dealer arm of MF Global, was put under the control of a trustee, James
Giddens, and placed into liquidation pursuant to an October 31, 2011 Order of the District Court
issued under the Securities Investor Protection Act, 15 U.S.C. § 78aaa, *et. seq.*  (Exhibit 25)

Redacted ████████████████████████████████████████████

████████████████████████████ (Connolly Dep., 181:22-182:19, 184:23-
185:10; *see also Id.* at 244:13-15) Redacted ████████████████████ (Adler Dep.,
124:10-126:10 Redacted ████████████████████████████

████████████████████████████████████████████████

███████ ) Redacted ███████████████████████████
(Geetter Dep., 61:16-62:3). Redacted ████████████████████████
██████████████████████████████████████ (Gumbs Dep.,
24:14-25:5); (Deposition of James Kobak ("Kobak Dep."), 35:7-11, 36:15-19, Exhibit 26) Redacted
██████████████████████████████████ (Kobak Dep., 34:24-36:9,
38:6-38:22,); (Connolly Dep., 188:7-191:7); (Exhibit 27); (Gumbs Dep., 69:3-17, 69:19-70:13,
199:9-201:5). Redacted ████████████████████████





Redacted (Kobak Dep., 22:22-23:4, 62:20-63:2, 137:6-18) Redacted

(Kobak Dep., 33:2-36:9, 38:6-39:7, 50:17-51:1); (Gumbs Dep., 51:23-52:8; 25:7-26:8, 28:9-25, 29:3-31:3). Redacted

(Gumbs Dep., 24:14-22, 36:17-37:3, 40:25-41:17); (Kobak Dep., 35:7-36:9, 77:19-78:4).

Redacted

(Connolly Dep., 96:24-97:17, 253:4-22); (Kaczanko Dep., 43:6-13, 84:13-85:1, 91:10-92:16, 104:24-105:13); (Exhibit 28). Redacted

(Exhibit 29); (Connolly Dep., 216:24-218:14) Redacted

The employees did not receive 60 days' written notice pursuant to the WARN Act, nor, to the best of their knowledge, did any of the other former employees of Defendant who were terminated on or about that date.  (*See* Plaintiffs' Decs.)  Plaintiffs have no conflict of interest amongst themselves or with any former employee terminated as part of the MF Global terminations that occurred in November 2011.  (*See Id.*)  Following their terminations, they retained proposed Class Counsel as their counsel to assert WARN Act claims on their behalf as well as a class claim on behalf of the other MF Global employees who, like themselves, were terminated as part of the collapse of MF Global in or about November 2011.  (*See Id.*)

## **ARGUMENT**

I.      **Inquiries into the Merits on Class Certification are Limited and are Not Binding on the Factfinder at a Later Stage in the Proceedings.**

Whether or not Defendants were a WARN Act "employer" requires factual and legal findings.  The Second Circuit does not authorize a court to make such conclusive findings at the class certification stage.  *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) (even if a merits issues is identical to with a Rule 23 requirement, "the determination as to a Rule 23 requirement is made only for purposes of class certification and is not binding on the trier of facts, even if that trier is the class certification judge.")

Factual findings at this stage are limited to the issue of whether the six Rule 23 prerequisities are met: commonality, typicality, numerosity, adequacy, predominance, and superiority.  *Amgen v. Connecticut Retirement Plans and Trust Funds,* 133 S.Ct. 1184, 1194-1195 (2013) ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."), *citing Wal-Mart Stores, Inc. v. Dukes*,  131 S. Ct. 2541, 2556, n.6, 180 L.Ed.2d 374 (2011) (a district court has no "'authority to conduct a preliminary inquiry into the merits of a suit'" at class certification unless it is necessary "to determine the propriety of certification."); *see also In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d at 41 (2d Cir. 2006).

Whether Defendants are a WARN Act "employer" is a question therefore that lies outside the bounds of the present motion.  Its resolution is not enmeshed with any Rule 23 factor.  It is relevant for class certification purposes in that the evidence shows Defendants treated the 1300 putative class members in a common manner when hiring, paying, assigning, supervising and terminating them, albeit with several accounting code differences (that also applied broadly).

9

Plaintiffs contend this and other evidence will compel a determination at summary judgment or trial that Defendants were their WARN Act employer – Defendants dispute this.

But, class certification is appropriate regardless of whether a defendant concedes or denies being the WARN Act employer of the class. *See Guippone v. BH S&B Holdings LLC,* 09 CIV. 1029 CM, 2011 WL 1345041 (S.D.N.Y. Mar. 30, 2011). In *Guippone*, the defendant holding company parent, Holdco, denied being a "single employer" of the operating company's employees. Upon class certification, the Court expressed doubt that that Holdco was a "single employer," and anticipated Holdco's summary judgment motion. Nevertheless, the District Court certified the class before it received and granted Holdco's summary judgment motion. *Id*. at *2. *Cf.*, *Guippone v. BH S & B Holdings LLC*, 737 F.3d 221, 228 (2d Cir. 2013) (vacating the trial court's determination on summary judgment that HoldCo was not an employer of the class).

As *Guippone* illustrates, a class should be certified once all the Rule 23 prerequisites are met*, regardless of the merits of the "employer" issue.[5] Here, as shown below, and as in *Guippone*, the Rule 23 requirements are met despite the impending "employer" inquiry.

## II.    Certification of a Class Will Allow for Orderly and Efficient Resolution of the Case

If class certification is granted, a "win" for Defendants would bind all class members, instead of only the named plaintiffs, which is a result, presumably, Defendants "should *favor*." *See Alberts v. Nash Finch Co.*, 245 F.R.D. 399, 408 n.4 (D. Minn. 2007).

A denial of class certification, on the other hand, would require a reopening of the bar date, which would invite a "multiplicity of activity" that "Rule 23 was designed to avoid" and jeopardize the efficient and orderly administration of the estate. *In re MF Global Inc.*, 512 B.R.

---

[5] Although the *Guippone* Court held back class notification, it provided no authority for doing so. The only District Court to grant class certification and follow *Guippone*'s notice hold-back ruling, reversed itself upon a motion for partial reconsideration, in light of the importance of notice. *See Ramcharan v AFL Quality Inc., et al.*, Civ. No. 12-7551 (RMB) (D.N.J. Apr. 14, 2015) (Exhibit 30)).

757, 764-65 (Bankr. S.D.N.Y. 2014) ("The principal consideration must be the effect of the class certification on the administration of the estate.") quoting *The Connaught Grp., Ltd. (In re The Connaught Grp., Ltd.),* 491 B.R. 88, 98 (Bankr. S.D.N.Y. 2013).

Because the group of 1100 MFGI-assigned employees and the group of 200 non-MFGI assgined employees discussed below will rely on the same proof that they were Holdings USA employees, neither should be excluded from the class. Rather, the class should be certified so that the entire class can test the merits in the orderly manner Rule 23 contemplates, and rise or fall together in a single action. *See Boucher v. Syracuse Univ.*, 164 F.3d 113, 119 (2d Cir. 1999). As discussed below, this is appropriate here because the class meets the Rule 23 requirements.

## III.    The Court Should Certify a Class and May, but Need not at This Time, Create Two Formal or Informal Subclasses.

The proposed sequence of certification followed by merits defenses, discussed above, raises a housekeeping question: whether the class definition should be adjusted to account for Defendants coding of its employees or whether the class should be split into subclasses. Such changes may properly be implemented by this Court, even though they are not necessary now.

Although the Complaint speaks of a single class of employees, the Court "is not bound by the class definition proposed in the complaint," *Robidoux v. Celani,* 987 F.2d 931, 937 (2d Cir.1993), and "is empowered under [Rule 23(c)(5) ] to carve out an appropriate class— including the construction of subclasses," *Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.,* 993 F.2d 11, 14 (2d Cir.1993); *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 54 (S.D.N.Y. 2012).

Rule 23 sets forth two formats for the court to manage a class action with two groups – formal subclasses and case management subclasses. A case-management subclass is a convenience subclass made for particular litigation purposes. *Casale v. Kelly*, 257 F.R.D. 396, 408-09, 415 (S.D.N.Y. 2009) citing Newberg § 7:33 (4th ed.). A case-management subclass

11

may be created to expedite resolution of the case by segregating a distinct legal issue that is

common to some members of the existing class.  *Id.* at 409.  Case-management subclasses are

"an appropriate procedural innovation under Rule 23(d)," when "there is no actual conflict

among class members in the underlying claims common to the entire class." *Id.* at 408-09.

When "the subclassification [is] appropriate under Rule 23(d), it is created *without* formally

designating it as a Rule 23 subclass." *Id.* at 409. It is therefore unnecessary to evaluate it under

Rule 23[(a)] for commonality, numerosity, typicality, and adequacy of representation." *Id.*

      If however there is a conflict between the two classes*,* formal certification of subclasses

pursuant to Rule 23(c)(5) "is the proper solution." *Id.* at 409 (formal subclasses should be

certified "if a court discerns a conflict" among members of a proposed class or class members

assert divergent claims based on non-overlapping factual circumstances, harms, and systemic

failures.) (citations omitted).  That is, Rule 23(c)(5) authorizes the Court to certify formal

subclasses to alleviate any discerned conflicts of interest. *Bd. of Trustees of the AFTRA Ret.*

*Fund v. JPMorgan Chase Bank, N.A.,* 269 F.R.D. 340, 354 n. 138 (S.D.N.Y. 2010) citing Rule

23(c)(5) and Advisory Committee Note on Subdivision (d).

      Here, there is no actual conflict that is presented by the distinct issue of whether

Defendants were the employer of the MFGI-coded class members.  The evidence and argument

that Holdings employed the MFGI-coded group will not undercut the claims of Holdings-coded

group, nor *vice versa*.  Both groups will rely to the extent necessary on common proof that

Defendants were their employer.   Plaintiffs' evidence satisfies a single Rule 23 class but they

would not oppose two convenience subclasses to efficiently manage the "employer" issue:  one

comprising the 1,100 MFGI-coded members and the other, the 200 non-MFGI-coded members.

Each easily can satisfy all the Rule 23 prerequisites standing alone.  In the event that a conflict arises, the Court thus will have the basis to create formal subclasses.

While, for the purpose of defining the two possible case management or conflicts subclasses, Rule 23(a) does not expressly require that a class be definite in order to be certified, courts in the Second Circuit have implied a requirement that a class be ascertainable before it may be properly certified.  *See, e.g.*, *Dunnigan v. Metro. Life Ins. Co.,* 214 F.R.D. 125, 135 (S.D.N.Y. 2003); *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004) (a court must determine that the class will be ascertainable at some stage of the proceedings). Ascertainability is usually found where membership in the class can be identified by "reference to objective criteria."  *Spagnola v. Chubb Corp.,* 264 F.R.D. 76, 97 (S.D.N.Y. 2010).

Here, the subclasses are ascertainable based on the entity designations (which are by no means conceded by Plaintiffs as having any legal significance for determination of actual employer) appear in the <span style="background:black;color:red">Redacted</span> spreadsheet <span style="background:black;color:red">Redacted</span> <span style="background:black">████████████</span> (*See* Exhibit 17).  Designating certain employees based on their Column-J subgroup assignment would provide a reference to objective criteria for the purposes of ascertaining the two potential subclasses.

## IV.   Proposed definitions.

The proposed Class definition is as follows:

> Persons (i) who worked at or reported to Defendants' New York and Chicago Facilities and were terminated without cause on or about November 11, 2011 or within 30 days of that date, as the reasonably foreseeable consequence of the mass layoffs and/or plant closings ordered by Defendants on or about November 11, 2011, and who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5) and/or the New York Labor Law § 860 *et seq*. (the "WARN Acts"), and (ii) who have not filed a timely request to opt-out of the class.

The following two subclass groups may be formed either formally or informally:

13

(i)      A subclass comprising all employees who were listed with the name MFGI in
the Oracle system spreadsheet of October 27, 2011, and

(ii)     A subclass comprising all employees who were listed with the name of one of
the non-MFGI MF Global entities in the Oracle system spreadsheet of
October 27, 2011.[6]

## V.    The Proposed Class Satisfies the Requirements of Rule 23.

Class certification requires that each of the four prerequisites for class certification set

forth in Federal Rule of Civil Procedure 23, namely, Rule 23(a)(1), (2), (3) and (4), be satisfied

and that, in addition, at least one of the subparts of Rule 23(b) – here 23(b)(3) – be satisfied.

As demonstrated below, the prerequisites for class certification are present in this action

as to each class and potential subclass.

### A.    <u>The Proposed Class Meets the Requirements of Rule 23(a).</u>

Fed. Civ. P. 23(a) provides as follows:

Prerequisites to a Class Action. One or more members of a class may sue or be sued as
Representative parties on behalf of all only if (1) the class is so numerous that joinder
of all members is impracticable, (2) there are questions of law or fact common to the
class, (3) the claims or defenses of the Representative parties are typical of the claims
or defenses of the class, and (4) the Representative parties will fairly and
adequately protect the interest of the class.

1.    <u>The Numerosity Requirement is Satisfied.</u>

Federal Rule of Civil Procedure 23(a)(1), requires that the class sought to be certified be

"so numerous that joinder of all members is impracticable." *Cashman v. Dolce Int'l/Hartford*,

225 F.R.D. 73, 91 (D. Conn. 2004) (finding numerosity for class of 117 former employees);

*Guippone v. BHS & B Holdings LLC,* 2011 WL 1345041, at *4 (S.D.N.Y. Mar. 30, 2011)

("[j]oinder need not be impossible") citing *Grimmer v. Lord, Day & Lord,* 937 F.Supp. 255

(S.D.N.Y. 1996)).  No specific number is needed to maintain a class action, but Courts in the

---

[6] If the Court determines that formal certification of subclasses is necessary, Scott L. Kisch can
serve as a representative of subclass (ii) and the other Plaintiffs can serve as representatives of
subclass (i).

Second Circuit presume that joinder is impracticable where the prospective class consists of 40

members or more. *Robidoux v. Celani*, 987 F.2d 931, 935-36 (2d Cir. 1993); *In re Partsearch*

*Technologies, Inc.*, 453 B.R. 84, 93-94 (Bankr. S.D.N.Y. 2011) (holding 192 WARN class

members sufficiently large to make joinder impracticable.).

WARN Act class action litigation typically involves claims brought by the former

employees of an employer who number far less than the approximately 1,300 former employees

of Defendants who make up the proposed class here. Moreover, where, as here, the size of

individual claims make individual suits financially unfeasible, a finding of numerosity is favored.

*See Cashman*, 225 F.R.D. at 91; (*see also* Plaintiffs' Decs.). Here, each potential subclass also

meets the numerosity standard as they would contain approximately 1,100 and 200 members,

respectively. (*See* Exhibit 17 (10/27 spreadsheet). Accordingly, Plaintiffs have satisfied the

numerosity requirement of Fed. R. Civ. P. 23(a)(1).

> 2. Questions of Law and Fact Are Common to All Members of the Proposed Class and the Claims of the Class Representatives are Typical of the Class.

The second and third prerequisites of class certification are that "there be questions of

law or fact common to the class" and that the "claims or defenses of the representative parties are

typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(2), (3). "The commonality

and typicality requirements are fairly easily met in an action brought under the WARN Act."

*Cashman*, 225 F.R.D.at 92. The commonality factor is satisfied if there is "at least one issue

common to the class" *Cashman*, 225 F.R.D. at 91. In *Guippone v. BH S&B Holdings LLC*, the

Court found the plaintiff and proposed class were "united by the common legal question of

whether the employer complied with the statutory notice requirements of WARN, 2011 WL

1345041, at *5.

In this regard, as in *Guippone*, the legal status of Defendants as the class members'

WARN Act employer is at issue.  There, the plaintiffs alleged they were terminated with the putative class members "as part of a common plan stemming from Defendants' decision to discontinue business operations and close the Facilities."  *Id*.  Here, the Plaintiffs allege they "were terminated from their employment as a result of a decision made collectively by the Defendants' leadership on or about November 11, 2011," (Complaint ¶ 1), and that "MF Global Group constitutes a single employer," (Complaint ¶ 17).

Similarly, as in *Guippone*, the factual and legal questions stem from a common core of facts regarding Defendants' actions and a common core of issues regarding every Class Member's rights including that Defendants employed more than 100 employees, (Complaint ¶ 49); (b) Defendants were an "employer," as that term is defined in 29 U.S.C. § 2101(a)(1) and 20 C.F.R. § 639(a), and continued to operate as a business until they decided to order mass layoffs or plant closings at the Offices (*id.* ¶ 50); (c) On or about November 11, 2011, Defendants ordered mass layoffs and/or plant closings at the Offices (*id.* ¶ 52); (d) the mass layoffs or plant closings at the Offices resulted in "employment losses" (*id.* ¶ 53); (e) Plaintiffs and Class Members were terminated by Defendants without cause on their part, as part of or as the reasonably foreseeable consequence of the mass layoffs or plant closings (*id.* ¶ 54); (f) Plaintiffs and Class Members are "affected employees" and "aggrieved employees of Defendants (*id.* ¶ 55, 58); (g) Defendants were required by the WARN Act to give Plaintiffs and the Class Members at least 60 days advance written notice of their terminations (*id.* ¶ 56); (h) Defendants failed to give Plaintiffs and Class members such written notice (*id.* ¶ 57); (i) Defendants failed to pay Plaintiffs and each of the Class Members their WARN Act wages and benefits amount (*id.* ¶ 59). *Compare with Guippone*, at *5.

These common issues satisfy the commonality requirement because they show that Defendants "have engaged in standardized conduct towards members of the proposed class."

16

*Shepherd v. ASI, Ltd.*, 295 F.R.D. 289, 297 (S.D. Ind. 2013) (certifying WARN class despite

claims that a "broad swath" fell outside the WARN Act's protection) *citing Keele v. Wexler,* 149

F.3d 589, 594 (7th Cir.1998).  It shows all the MF Global employees were terminated within the

same time frame and in the same manner, and none received the 60–day notice.  The claim of all

1,300 "arises from this 'common nucleus of operative fact,'" and "presents an opportunity to

determine, at a stroke, whether Defendants' conduct violated their legal obligations towards all

the employees" terminated in November 2011.  *Id.*

    The inquiry into whether Defendants were the WARN Act employer of all of the

proposed class members does not divide the class because it is likely to "generate common

*answers* apt to drive the resolution of the litigation."  *Wal-Mart Stores, Inc. v. Dukes, 131* S. Ct.

2541, 2551, 180 L. Ed. 2d 374 (2011) (emphasis in original), cited in *Shepherd v. ASI, Ltd.*, 295

F.R.D. at 297.  The inquiry will likely lead to a common answer for the groups of 1,100 and 200,

and may well lead to a common answer for the entire group of 1,300.

    In fact, the evidence relevant to determination of WARN "employer" uncovered so far is

common in nature.  Most importantly, Redacted ██████████████████ entered into

employment agreements which state they would be employed by Holdings USA.  (Connolly

Dep.39:8-25, 68:4-22, 116:24-117:7, 104:5-105:25, 169:22-170:17).  Plaintiffs all entered into

these standard employment agreements with Holdings USA.  (*See* Plaintiffs' Decs.)

    Coding is the only objective difference between the 200 or so Holdings USA employees

coded as Holdings USA and the 1,100 Holdings USA employees coded (for accounting

purposes) as MFGI on the MF Global ledger.  But for the purposes of *employment*, everyone was

employed by Holdings USA under the express terms of their legally binding employment

contracts, and as a matter of record with the Internal Revenue Service. (Kisch Dec., Exhibit C)

As all employees functionally reported directly to, or indirectly upstream, to Holdings USA, and

there is no evidence MFGI had employment agreements with anyone or was an employer of

record with the IRS until after the November 11, 2011 layoff Redacted

Additional common evidence will be used to support a showing that Holdings USA itself

employed and terminated the entire class, including the following facts:



1. Redacted (Connolly Dep., 110:5-22). Redacted (Connolly Dep., 140:6-19 Redacted, 145:25-146:6) Redacted), 266:17-268:2 Redacted), 317:22-24 Redacted); 306:11-14 Redacted); (Exhibit 16); (Corrigan Dec. ¶¶ 5-8 (Exhibit 19)).

2. Redacted (Connolly Dep., 69:17-71:22 Redacted; 140:6-141:23, 147:9-22 Redacted.

3 Redacted (Connolly Dep., 39:8-25, 68:4-22, 116:24-117:7, 104:5-105:25, 169:22-170:17), Redacted (*Id.* at 27:10-28:15, 266:17-268:2, 160:21-161:14, 163:17-164:21).

4. Redacted (Geetter Dep., 57:9-19, 63:21-65:15); (Connolly Dep., 31:19-33:20, 133:8-22, 210:7-25); (Corrigan Dec. ¶¶ 5-8).

5. Redacted (Connolly Dep., 23:2-24:17, 144:13-145:23,

266:17-268:2);  (Flynn Dep., 61:4-62:18, 71:9-72:16); (Gumbs Dep., 83:10-85:9, 89:19-90:5, 104:6-11, 105:3-7, 105:13-17).



6. Redacted (Gumbs Dep., 18:15-19:14, 19:16-25, 113:8-24).

7. Redacted (Kobak Dep., 33:2-36:9, 38:6-39:7, 50:17-51:1); (Gumbs Dep., 51:23-52:8; 25:7-26:8, 28:9-25, 29:3-31:3); (Connolly Dep., 226:13-227:19) Redacted .

8. Redacted (Gumbs Dep., 25:7-26:8); (Kobak Dep., 35:7-11, 36:15-19).

9 Redacted (Connolly Dep., 96:24-97:17, 253:4-22); (Kaczanko Dep., 43:6-13, 84:13-85:1, 91:10-16, 91:17-92:16, 104:24-105:13); (Exhibit 28); (Exhibit 29).

10 Redacted (Connolly Dep.,116:15-24, 117:11-20)

11 Redacted (Kobak Dep., 22:22-23:4, 62:20-63:2, 137:6-18).

Because the evidence necessary to determine Defendants' liability to the class is overwhelmingly common to the class, commonality is satisfied.

In terms of typicality, it is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.  *Cashman*, 225 F.R.D. at 91, *citing Presser v. Key Food Stores Co-op., Inc.,* 218 F.R.D. 53, 58 (E.D.N.Y. 2003) (finding that a WARN Act plaintiff met the commonality and typicality requirements); *Roquet v. Anderson,* 2003 WL 21994019, at *2 (N.D. Ill. Aug.18, 2003) (same).

19

Plaintiffs suffered the same type of injury as the rest of the Class. █Redacted██████████

████████████████████████████████████████████████

████████████████████████████████There are no conflicts of

interest between the proposed representatives of the Class and the other Class Members.  (*See*

Plaintiffs' Decs.)  Defendants' failure to comply with the requirements of the WARN Act

represents a single course of conduct resulting in injury to all Class Members, including

Plaintiffs.  Neither Plaintiffs nor other Class Members received at least 60 days' notice or 60

days' wages and benefits, pursuant to the requirements of the WARN Acts.  (*See* Plaintiffs'

Decs.)  The same holds true with respect to the potential subclasses *vis a vis* the representatives

of those subclasses.

As in *Cashman*, aside from damages, the class of former employees of Defendants have

precisely the same legal claims as Plaintiffs.  *Id*. at 92.  To the extent that the employees who

were categorized as MFGI employees may need to defeat certain defenses and prove that they

were employed in the legal sense by one or more of the Defendants, those issues are common to

that subclass and common as between the representatives and the class members. Accordingly,

the commonality and typicality requirements of Rule 23 are satisfied here.

3. Plaintiffs Will Fairly and Adequately Protect the Interests of the Class.

Federal Rule of Civil Procedure 23(a)(4) provides that a class action is maintainable only

if "the Representative parties will fairly and adequately protect the interests of the class."  This

element requires a two-step analysis.  First, the court must determine whether the named class

representatives have interests that "are free from conflicts of interest with the class they seek to

represent.  *Amchem Prods v. Windsor*, 521 U.S. 591, 625 (1997).  Second, the court must find

that the class would be represented by qualified counsel.  *Bourlas v. Davis Law Associates,* 237

F.R.D. 345, 352 (E.D.N.Y. 2006); *Marisol A. ex.rel. v. Guliani*, 126 F.3d 372, 378 (2d Cir.

1997); *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir. 1992); *Eisen v.*

*Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968), *cert. denied*, 417 U.S. 156 (1974).

As the *Guippone* Court and many others have recognized, the WARN Act is "particularly

amenable to class litigation." 2011 WL 1345041, at *2. Here as in all WARN cases, a common

issue joins all 1,300 former MF Global employees together – they were terminated by MF Global

in a "mass layoff" (as that term is defined under the WARN Act) without 60 days' WARN notice

due to the collapse of MF Global in November 2011. The six Plaintiffs here are as adequate and

typical of the class as was Vittoria Conn, a word processor, who Dewey & LeBoeuf conceded

could represent all the employees of its two largest offices in that collapse and mass layoff.

The first element of Rule 23(a)(4) is met in this case because, as set forth above, no

divergence exists between the interests of the proposed Class Representatives and the interests of

the Class as a whole. (*See* Plaintiffs' Decs.) To the extent any conflicts exist between the

interests of the subclasses, which they don't, the representatives of each respective subclass have

interests that are fully aligned with those of their respective proposed subclass members.

The second element of Rule 23(a)(4) is met because Plaintiffs' counsel are qualified,

experienced and generally able to conduct the proposed litigation. Putative Class Counsel, Jack

A. Raisner and René S. Roupinian of Outten & Golden LLP, Charles A. Ercole and Lee D.

Moylan of Klehr Harrison Harvey Branzburg. LLP, and Mary Olsen of The Gardner Firm, P.C.,

have substantial experience in prosecuting large scale class and collective actions on behalf of

employees and, specifically, WARN Act class actions such as this one. (*See* Exhibit 31 (Order

appointing interim class counsel) (finding "each of the firms has extensive experience handling

complex litigation, including class actions" and "each of these firms has specific skills that

would benefit the putative class"); *See also* Declaration of Jack A. Raisner and Exhibits 32-33

(enumerating the qualifications of counsel).

Based on all of the foregoing, the four prerequisites of Rule 23(a) are met in this action.

**B.    The Proposed Class Meets the Requirements of Rule 23(b)(3).**

Class Certification is proper under Rule 23(b)(3) where "the questions of law or fact

common to the members of the class predominate over any questions affecting only individual

members, and … a class action is superior to other available methods for the fair and efficient

adjudication of the controversy." *Ramos v. SimplexGrinnell LP,* 796 F.Supp.2d 346, 359

(E.D.N.Y. 2011).  The "Rule 23(b)(3) predominance inquiry tests whether proposed classes are

sufficiently cohesive to warrant adjudication by representation." *Wal-Mart Stores, Inc., v. Visa*

*USA Inc. (In re Visa Check/MasterMoney Antitrust Litig.),* 280 F.3d 124, 136 (2d Cir. 2001).

Considerations of judicial economy and efficiency are of high importance and, where, as

here, determination of the common, predominant issues shared by the Class Members will

dispose of the matter, class certification should be ordered.  *In re Sumitomo Copper Litig.,* 194

F.R.D. 480 (S.D.N.Y. 2000); *In re PE Corp. Securities Litig.*, 228 F.R.D. 102, 110 (D. Conn.

2005) (efficiency and superiority requirement of Rule 23(b)(3) is satisfied where there is only

one principal issue in the case).  A class action is the superior method of resolving this dispute

because many of the claims are small, making individual lawsuits impracticable.  *Phillips*

*Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

In *In re Partsearch Technologies, Inc.,* 453 B.R. 84 (Bankr. S.D.N.Y. 2011), the court

certified a WARN class for settlement purposes finding, *inter alia*, predominance and

commonality, stating:

> The Settlement Class is suited to proceed as a class under Rule 23(b)(3). For the
> reasons previously discussed, questions of law or fact common to the Settlement Class

22

predominate over questions affecting only individual members. The action involves 192 claimants who are asserting claims based on common facts and under the same legal theory. The Debtor even concedes in the Settlement that all of the Class Members were subject to the same circumstances surrounding their termination. The Settlement Class is also superior to other methods of resolving the controversy because individually adjudicating each of these substantially similar claims would be impracticable and consume significant judicial resources. Moreover, proceeding individually would likely be impractical for individual members because each holds a relatively small claim. In such circumstances, as with those before the Court, the class action device is frequently superior to individual actions.

453 B.R. at 96 (citations and quotation marks omitted).  In addition to the above criteria,

Fed. R. Civ. P. 23(b)(3) sets forth four factors to guide the court's determination as to whether a

class action is superior and whether issues of fact and law common to class members

predominate over individual matters.  They are:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Rule 23(b)(3); *See also In re Partsearch Technologies, Inc.*, 453 B.R. at 97 (finding "[t]he

factors enumerated in Rule 23(b)(3)(A)-(D) also support certification.").

Here, similar to the WARN suit in *In re Partsearch*, neither Plaintiffs nor any of the other

class members are expressing a desire to prosecute and control separate actions.  To Plaintiffs'

knowledge, no other litigation concerning this controversy is pending.  (*See* Plaintiffs' Decs.)

Concentrating the WARN litigation in a class action will avoid multiple suits and assist in

efficient administration of the estate.  Finally, the difficulties in managing this litigation as a

class action are few: the Class Members can be easily identified; the potential liability of

Defendants can be readily calculated; and there is only one combined course of conduct – that of

Defendants – to examine and adjudicate.  For the foregoing reasons, Plaintiffs have satisfied the

criteria of Fed. R. Civ. P. 23(b)(3).

## VI.    Appointment of the Class Representatives.

Plaintiffs have been diligent in pursuing the class claim and have worked with counsel in initiating and prosecuting the action.  They have no conflict of interest with other Class Members; and have and will fairly and adequately represent the interests of the Class.  (*See* Plaintiffs' Decs.)  For these reasons, Plaintiffs should be appointed Class Representatives.

## VII.    The Form and Manner of Service of Notice.

Plaintiffs further submit that service of the proposed Notice of Class Action (Exhibit 34) by First Class Mail, postage prepaid, to each member of the Class at their last known address as shown in the Defendants' records, is the best notice practicable under all the circumstances.

Fed. R. Civ. P. 23(c)(2)(B) mandates that for any class certified under Rule 23(b)(3), the Court must determine the best notice practicable under the circumstances, including individual notice to potential class members and that the notice must concisely and clearly state in plain, easily understood language:

- the nature of the action,
- the definition of the class certified,
- the class claims, issues or defenses,
- that a class member may enter an appearance through counsel if the member so desired,
- that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and
- the binding effect of a class judgment on class members under Rule 23(c)(3).

Rule 23(c)(2)(B).  *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1983).

Although no rigid standards govern the contents of notice to Class Members, the notice must "fairly apprise the prospective members of the Class of the [proceedings] and of the options that are open to them in connection with [the] proceedings."  *Weinberger v. Kendrick*, 698 F.2d at 70; *Grunin v. International House of Pancakes*, 513 F.2d 114, 122 (8th Cir.), *cert. denied*, 423

U.S. 864, 96 S. Ct. 124 (1975), *quoting,Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp*., 323 F. Supp. 364, 378 (E.D. Pa. 1970), *aff'd sub nom*, *Ace Heating & Plumbing Co. v. Crane Co*., 453 F.2d 30 (3rd Cir.1971).  Individual mailings to each Class Member's last known address is appropriate. *Patrowicz v. TransamericaHomeFirst, Inc.*, 359 F. Supp. 2d 140, 153 (D. Conn. 2005).

Here, the contents of the proposed Notice are sufficient. The Notice summarizes the nature of the pending WARN Act litigation and apprises the proposed Class, among other things, of the Class definition, of the claims, issues and defenses, that complete information regarding the action is available upon request from Class Counsel, that any Class Member may opt-out of the Class, that if they do not opt-out, they will be bound by any judgment or settlement in the litigation and that if they do not opt-out, they may appear by their own counsel. In short, the proposed Notice satisfies all the requirements of Rule 23(c)(2)(B).

The names and addresses of all the putative Class Members are contained in Defendants' records.  Once that information is provided to Plaintiffs, Plaintiffs' counsel will mail the Notice of Class Action by first class mail, postage prepaid to the last known address of each of the putative Class Members allowing at least 30 days from the date of the mailing for each Class Member to object to Class certification or to opt-out of the Class.  Plainly, this is the best practicable notice under the circumstances.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court enter the proposed Order, attached hereto as Exhibit 35, granting Plaintiffs' Motion in all respects.

DATED: July 13, 2015
          New York, New York

Respectfully submitted,

 /s/ Jack A. Raisner
Jack A. Raisner, Esq. (JR 6171)
René S. Roupinian, Esq. (RR 3884)
**OUTTEN & GOLDEN LLP**
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

Charles A. Ercole, Esq. (Pro Hac Vice)
Lee Moylan, Esq. (Pro Hac Vice)
**Klehr Harrison Harvey Branzburg LLP**
1835 Market Street, Suite 1400
Philadelphia, PA 19103
Telephone: (215) 569-2700

Stuart J. Miller, Esq. (SJM 4276)
**LANKENAU & MILLER, LLP**
132 Nassau Street, Suite 423
New York, New York 10038
Telephone: (212) 581-5005

Mary E. Olsen (Pro Hac Vice)
M. Vance McCrary (Pro Hac Vice)
**THE GARDNER FIRM, P.C.**
210 S. Washington Avenue
Mobile, AL  36602
Telephone: (251) 433-8100

*Attorneys for Plaintiffs and the putative Class*